[Crim. No. 17639. Second Dist., Div. Five. Apr. 21, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
EUGENE REDMOND, Defendant and Appellant.

## COUNSEL

Helen E. Simmons, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, William E. James, Assistant Attorney General, and Richard W. Bakke, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

AISO, J.—Defendant Eugene Redmond pleaded "not guilty" and "not guilty by reason of insanity" to a charge of an assault with a deadly weapon and by means of a force likely to produce great bodily injury allegedly committed on January 20, 1968. (Pen. Code, § 245, subd. (a).) Criminal proceedings were adjourned to permit defendant's hospitalization for "present insanity" (Pen. Code, § 1368). Criminal proceedings were resumed and trial of the cause to the jury commenced on July 14, 1969.

When the jury found defendant guilty only of a simple assault (Pen. Code, § 240), a lesser and necessarily included misdemeanor offense, defendant through counsel and personally moved for a withdrawal of his "not guilty by reason of insanity" plea. The trial court denied the motion in view of what it considered "overwhelming" evidence before it that defendant was insane when he committed the offense. The insanity issue was then tried over defense objections and defendant was committed to a state hospital, the court observing that it did not feel that defendant was fully recovered. (Pen. Code, § 1026.)

Defendant appeals from the order of commitment[1] entered upon a verdict finding him to have been insane at the time of the offense. His sole contention on this appeal is that the trial court erred in denying his motion to withdraw his insanity plea. We, therefore, limit our statement of the procedural and background facts to those relevant to the issue presented.

When the case was first called for trial on April 10, 1968, defendant's "present sanity" (Pen. Code, § 1368) was questioned. Hearing on the issue was had and defendant was committed to the Atascadero State Hospital for care and treatment pending recovery of his sanity. Following certification of his recovery by the hospital authorities, defendant was returned to the court for trial. On April 7, 1969, the cause was called for the setting of a trial date. The trial judge (different from the one who presided at the 1968 section 1368 hearing) expressed his doubt of defendant's then present sanity. Pursuant to defense motion for appointment of psychiatrists under Evidence Code section 730,[2] the trial court appointed Doctors Frederick J.

---

[1]His notice of appeal purports to appeal from "judgments" as well as from the order of commitment. However, the record discloses no judgments; consequently the appeal from nonexistent judgments is dismissed. Interlocutory rulings, e.g., the order denying defendant's motion to withdraw his plea of not guilty by reason of insanity, will be reviewed upon the appeal from the order of commitment. (Cf. *People* v. *Brotherton* (1966) 239 Cal.App.2d 195, 197 [48 Cal.Rptr. 513].) The order of commitment is, however, deemed a judgment for purposes of appeal. (Pen. Code, § 1237, subd. 1.)

[2]Defense counsel accompanied this request with a statement to the court that he was not asking for a confidential report.

Hacker and Harold C. Deering to examine defendant and to report their findings as to: (1) defendant's present sanity, (2) his sanity as of the date of the crime charged, and (3) his "ability to form specific intent" at the time of the alleged offense. On the basis of the reports of these doctors, the trial court again, on May 9, 1969, expressed its doubt as to "defendant's present sanity." It suspended criminal proceedings and referred defendant to "Department 95 [the mental health department] pursuant to Section 5551 WIC." Defendant was returned to the criminal court, however, as "not accepted" by department 95. The reason for the nonacceptance is not specifically stated in the record.[3]

The trial court then called the case "for [present] sanity hearing and trial" on July 14, 1969. Pursuant to stipulation of counsel, the court read and considered the doctors' reports and the Atascadero Hospital reports and found defendant "presently sane and ready to stand trial." A third doctor, Dr. Marcus Crahan, was also appointed at this time to examine defendant and file a report under Evidence Code section 730.

The victim of the assault could not be found at the time of trial and the People were compelled to present his testimony to the jury through the reading of portions of the reporter's transcript of the preliminary hearing.

The trial took place prior to the rendition of either *People* v. *Hood* (1969) 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370], or *People* v. *Rocha* (1971) 3 Cal.3d 893 [92 Cal.Rptr. 172, 479 P.2d 372] by our Supreme Court, and court and counsel proceeded upon the premise that an assault with a deadly weapon was a specific intent crime.

To establish that defendant's mental illness at the time of the offense diminished his capacity to entertain the requisite specific intent, the defense called Doctors Hacker and Deering as defense witnesses. Dr. Hacker, however, testified that he could not render an opinion as to defendant's diminished capacity because he thought defendant was insane at the time of the crime by *M'Naughten standards* and that diminished capacity therefore was immaterial. The testimony of Dr. Deering, who testified before Dr. Hacker, was not as pointed but it included a statement that in his opinion defendant was insane by both "medical and legal standards."

Defense counsel in moving for withdrawal of the "not guilty by reason of insanity" plea frankly stated that it was his client's wish to accept criminal punishment consisting of a county jail sentence, which at most was six

---

[3]The reason might have been that department 95 felt that the trial of the present sanity issue (Pen. Code, § 1368) should first be tried in the criminal court, where it is customarily tried according to the practice in Los Angeles County. We, of course, do not know the actual reason.

months,[4] rather than an indefinite noncriminal commitment to a mental hospital. The trial court expressed its view that such a disposition would result in defendant's getting a criminal record, albeit for a misdemeanor, in face of "overwhelming" or "very, very strong" evidence in the record that defendant was not criminally responsible for the crime because of his insanity. It stated to defense counsel that under the circumstances, defense counsel (in its opinion) was not acting in the best interests of his client. It also expressed concern about compliance with Penal Code section 1367 providing: "A person cannot be tried, adjudged to punishment, or punished for a public offense, while he is insane." It denied defendant's motion to withdraw his insanity plea and ordered the issue to be tried over defense objections.

When a jury, different from the one which tried the issue raised by the "not guilty" plea was impaneled, defense counsel rested without producing any evidence. The People likewise rested. The defense then requested the judge to advise the jury to return a verdict finding defendant to have been sane. The trial court, caught in this unenviable situation, denied the request. The record reflects that the trial court felt that its duty went beyond acting as a mere umpire in a contest of wits between counsel and that it would be held derelict in performance of its duties if it did not insist upon a full development of the facts so that justice to both defendant and to the People could be achieved. In pursuance of this goal, the trial court called upon Doctors Deering and Crahan and Dr. John Paul Walters, who apparently had examined defendant at one time, as the court's witnesses. Dr. Hacker was out of town and unavailable. The court conducted the direct examination of these medical witnesses. The deputy district attorney and defense counsel cross-examined them.

For the avowed purpose of proving that defendant was suffering from a delusion in stating to the doctors and in the course of his testimony at the "not guilty" phase of the trial that the reason for his arrest was due to his relations with the mother of a Los Angeles police officer rather than because of the crime charged, the prosecution put on the lady and police officer concerned to rebut the truth of such statements.

Mrs. Linda Jackson testified that she had known defendant from the latter part of 1964. Defendant had worked for her as a salesman in her furniture store at one time, but she had to fire him. He proposed marriage stating that he wanted to marry and to have children, but she had rejected him as a suitor. In February 1967, she appeared in court and testified against him

---

[4]A misdemeanor assault (Pen. Code, § 240) was punishable by a fine not exceeding $500 or a county jail sentence not exceeding six months, or both. (Pen. Code, § 241.)

upon a charge for which she had caused defendant to be arrested. She thereafter never saw defendant until after his arrest on the present charge.

Officer Jackson testified that he had arrested defendant in February 1967 for an offense of which his mother was the victim. The only reason he happened to be the arresting officer was that he was on routine patrol assigned to the area. He had also arrested defendant in July 1967, but this was in connection with a matter in no way involving his mother. He never threatened to "get" defendant nor did he arrange for any fellow police officers to harass him. He knew of no "relationship" between his mother and defendant.

Upon the trial court's assurance that defendant's taking the witness stand would not be a waiver of defense objections to the denial of his motion to withdraw his insanity plea and to the trial of the insanity issue, defense counsel acquiesced in defendant's insistence that he testify and tell his side. The testimony in many parts is not coherent so that it is difficult to summarize all parts of it. In essence, he admitted having been at the bar where the assault was alleged to have occurred, having raised his glass "with no intention of striking the individual," having been asked by the bartender to leave the premises, and having been arrested on the street about 45 minutes later. He said that he had worked for Mrs. Linda Jackson and that they had talked about getting married and about adopting children since they could not have children of their own. The night before his arrest, he had asked a police officer on the street if it would be all right to go to the police station to talk to Officer Jackson concerning $3,000 he claimed the officer's mother owed him. He was arrested by the policeman with whom he had had the foregoing conversation on the night prior to his arrest. He assumed that Officer Jackson had called the other officer to arrest him. The physical strain of his duties as salesman had caused him to have physical seizures starting around 1964 or 1965—epileptic-type convulsions during which he blacked out. He considered himself physically, but not mentally, ill. He had objected to pleading not guilty by reason of insanity. He did not feel that he had been or was insane. He was not guilty of the charge of which he had been convicted.

█ The accommodation between humanitarian principles which absolves a convicted criminal of guilt because of insanity and provides for his hospitalization and the necessity of protecting the community at the same time against violent crimes and injuries on innocent people perpetrated by insane persons is neither simple nor easy. We also seek in this accommodation to respect even the mentally ill person's dignity as an individual to the utmost extent permissible with due regard for the protection of the public. The trial judge found himself in a most difficult situation, and, needless to

say, his motives were most laudable. Nevertheless, we think the more appropriate procedure, one which would avoid the necessity of the trial court finding itself in the role of an advocate and one which is more consonant with respect for defendant's rights, is that suggested by a reading of *Lynch* v. *Overholser* (1962) 369 U.S. 705 [8 L.Ed.2d 211, 82 S.Ct. 1063] and *People* v. *Love* (1937) 21 Cal.App.2d 623, 626 [70 P.2d 202].

In *Lynch,* the defendant was charged with violations of the District of Columbia Code, section 22-1410, which makes the drawing and negotiating of checks with knowledge of the insufficiency of funds or credit in the drawee bank to meet payments thereof a crime.[5] The checks in question were for amounts of $50 each. When the defendant appeared in the municipal court to plead "not guilty" to the charges, he was sent by the court to the District of Columbia General Hospital for a report as to his mental condition. It was reported back that the defendant was "then 'of unsound mind, unable to adequately understand the charges and incapable of assisting counsel in his own defense.' " The case was continued pending the defendant's treatment. The assistant chief psychiatrist later advised the court that the defendant appeared then "able to understand the charges against him, and to assist counsel in his own defense." The communication further added, however, that the defendant's crime was a product of a mental disease. This fact, if true, would have excused that defendant from criminal responsibility under the *Durham* rule (*Durham* v. *United States* (1954) 214 F.2d 862 [94 App.D.C. 228, 45 A.L.R.2d 1430]) then in force in the District of Columbia.

Upon the defendant's return to court, being duly represented by counsel, he sought to withdraw his previous plea of "not guilty" and to enter a plea of "guilty" to both charges. The court refused to accept the guilty pleas apparently because of the report that the alleged offenses were the products of mental illness. The court found the defendant not guilty by reason of insanity and committed him to a mental institution pursuant to section 24-301(d) of the District of Columbia Code.[6]

After being confined for about six months, the defendant sought his release by habeas corpus contending that he was being unconstitutionally deprived of his liberty. Without reaching the constitutional issue, the United States Supreme Court held that confinement under this criminal statute is authorized only where the defendant raises the insanity issue in defense. In

---

[5]Cf. our Penal Code section 476a.

[6]This section read: "(d) If any person tried upon an indictment or information for an offense . . . is acquitted solely on the ground that he was insane at the time of its commission, the court shall order such person to be confined in a hospital for the mentally ill."

absence of such invocation by the defendant, commitment to a mental institution would have to be effected under provisions pertaining to the civil commitments of mentally ill persons.

In *People* v. *Love* (1937) *supra,* 21 Cal.App.2d 623, the trial court permitted a withdrawal of an insanity plea after a jury returned a second degree murder verdict. Entertaining a doubt as to the defendant's then present sanity, the trial court had this issue tried to a jury before proceeding to impose punishment. The jury found the defendant to be presently sane. The defendant thereupon sought to reinstate her plea of not guilty by reason of insanity, but the court denied the reinstatement. She urged upon appeal that once a trial had commenced, the trial court was without jurisdiction to permit an insanity plea to be withdrawn. The appellate court in ruling against such contention stated: "The defendant could withdraw her plea of not guilty by reason of insanity at any time." (21 Cal.App.2d at p. 626.)

The teaching of these two cases points to the procedure which we outline as being appropriate: (1) The trial court should reassure itself that a defendant at the time he seeks to withdraw his insanity plea is presently sane, i.e., that he is capable of understanding the nature and purpose of the proceedings against him, that he comprehends his own status and condition with reference to such proceedings, and that he is able to assist his attorney in the conduct of his defense. (Pen. Code, §§ 1367-1368; *People* v. *Perry* (1939) 14 Cal.2d 387, 399 [94 P.2d 559, 124 A.L.R. 1123]; *People* v. *Field* (1951) 108 Cal.App.2d 496, 498-500 [238 P.2d 1052]; see CALJIC (3d ed.) No. 4.10.) (2) If defendant is found to be presently insane, the solution is obvious. (Pen. Code, §§ 1370, 1367.) (3) If defendant is found to be presently sane, then a series of questions should be propounded to such defendant and to his counsel and the answers thereto be made of record to meet requirements of *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], certiorari denied 398 U.S. 911 [26 L.Ed. 2d 72, 90 S.Ct. 1708]; and *People* v. *West* (1970) 3 Cal.3d 595 [91 Cal. Rptr. 385, 477 P.2d 409], insofar as they might be applicable to the situation presented. (4) If the court be satisfied that such defendant is making a free and voluntary choice with adequate comprehension of the consequences, then withdrawal of the plea should be permitted.

The ultimate effect of a withdrawal of the insanity plea at this juncture and under the circumstances of this case is one which has some characteristics of a guilty plea and some resemblances to a plea bargain. The possibility that a defendant is submitting to criminal punishment for an offense of which he claims he is not in fact criminally responsible is no longer an obstacle now that plea bargaining and acceptance of a guilty plea to a lesser

offense of which such defendant may not in fact be guilty has been approved in *People* v. *West* (1970) *supra,* 3 Cal.3d 595 with the safeguards there described.

What we state in this opinion, of course, is not intended to apply to situations where there is no doubt of a defendant's sanity in the mind of the trial court and the reports of examining psychiatrists unanimously indicate that such defendant was sane at the time of the offense. Free withdrawal of the insanity plea under such circumstances should be permitted as it has been in the past.

If the trial court feels despite its acquiescence in the withdrawal of the insanity plea that a defendant is in need of further medical attention or that there is danger of further acts of violence by the defendant while insane, in jail or out, it can direct the sheriff to institute civil mental illness commitment proceedings under our Welfare and Institutions Code section 5150 et seq., in line with the suggestion of the United States Supreme Court as to this being the proper course of action in *Lynch* v. *Overholser, supra.*

In this connection, section 1370 of the Penal Code also furnishes some helpful guidance. It provides that if criminal charges are dismissed prior to a defendant's recovery of his present sanity, he is, upon recovery of his present sanity, nevertheless subject to the applicable provisions to be found in the Welfare and Institutions Code section 5000 et seq., which provide for involuntary civil commitments.

The procedure which we have outlined above not only eliminates the judge finding himself in the role of an advocate examining witnesses,[7] but it will also keep the district attorney on the proper side of the fence with reference to which side has the burden of proof. (Evid. Code, § 522.)[8] In the trial of the insanity issue in a criminal action, the burden is upon the defendant to prove that he is insane by a preponderance of the evidence. (*People* v. *Daugherty* (1953) 40 Cal.2d 876, 898 [256 P.2d 911],

---

[7]There may be cases in Penal Code section 1368 hearings wherein the trial court is compelled to take the initiative in having proof on the issue of present sanity introduced, despite the fact that such a role is not to be recommended in an adversary hearing.

[8]It might be well to add that while the trial defense counsel in this case is to be commended for his vigorous advocacy of defendant's cause, he is mistaken in his notion that militant advocacy requires constant colloquy with court and adversary counsel. A point may be succinctly but competently argued, and when the trial court has ruled, repetition of argument after the ruling, constantly throughout the course of trial, is unnecessary. Pages and pages of the transcript in this case contain reports of colloquy not one whit helpful in protecting defendant's rights, but which add to the burden of the appellate court which must read the transcript and to the cost of the taxpayers who have to pay for the reporter's transcript of his unfruitful cavil. In having been exceedingly patient with obstreperous counsel, the trial court is to be commended.

cert. den. 346 U.S. 827 [98 L.Ed. 352, 74 S.Ct. 47].) In the civil commitment proceeding, the burden would be upon the People. In the instant case, the anomaly occurred wherein the prosecutor is proving the case which the law states to be the defendant's burden to prove.

The order of commitment is reversed and defendant is ordered remanded to the superior court, with directions to that court to set aside the verdict finding defendant insane at the time he committed the offense and to reconsider defendant's motion to withdraw his insanity plea in light of the views set forth above in this opinion; attempted appeal from nonexistent judgments is dismissed.

Stephens, Acting P. J., and Reppy, J., concurred.