[Crim. No. 19005. Second Dist., Div. Five. Aug. 20, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES NORMAN COOK, Defendant and Appellant.

406

---

## COUNSEL

Robert A. Lapporte, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Bradley A. Stoutt, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KAUS, P. J.**—Charged in count I, with murder and in counts II and III with kidnaping for the purpose of robbery, defendant pleaded not guilty. One Lawrence Amen Thomas had been charged with the same murder. In fact it was the prosecution's case that it was Thomas who did the actual killing and that Cook merely aided and abetted him. Thomas' case was tried first. He testified in his own behalf and was acquitted. Shortly thereafter defendant's case was called for trial before the same judge. Defendant was represented by private counsel. It is perfectly obvious that the reported proceedings are nothing but an elaborate script of the type not uncommon before the Supreme Court, in *People* v. *West,* 3 Cal.3d 595, 604-611 [91 Cal.Rptr. 385, 477 P.2d 409], made plea bargains respectable.

At the outset of the proceedings defendant's counsel announced that his client had decided to waive his right to trial by jury. The prosecutor then by questioning defendant, ascertained that: (1) defendant had disclosed all he knew about the facts and circumstances surrounding the charges against him to his attorney; (2) he had thoroughly discussed the matter with his attorney; (3) the attorney had advised him concerning the applicable law as he saw it; and (4) defendant was aware of the nature of a jury trial and the need for a unanimous verdict.

The prosecutor then, without breaking stride, though no one had said for the record that the matter would be tried without the People producing witnesses, ascertained through further questioning of defendant that he was aware of his right of confrontation. Referring to a suggestion of defense counsel which does not appear on the record, the prosecutor made it clear that if the matter were to be submitted on the transcripts of the Thomas trial and defendant's own preliminary hearing, defendant would not be confronting anybody. Referring to nothing that appears on the record the prosecutor then ascertained that such a submission on the transcripts would, in defendant's understanding, mean that he was giving up his "rights completely to present any defense." He also ascertained that defendant understood that he could not be compelled to testify against himself and that "to the extent that these transcripts show you are guilty" defendant was giving up his "right of [*sic*] self-incrimination." He made certain that defendant understood that in the prosecutor's opinion the

transcripts contained sufficient evidence to convict him of second degree murder and that defendant realized that he would not be able to testify in his own behalf nor call any witnesses in his defense. Finally he brought out that defendant understood that while no one could promise him how the court would dispose of the matter and how long he would have to remain in a state prison or with the Youth Authority, the court had indicated in a chambers discussion that it would consider a referral to the Youth Authority.

The matter was then submitted on the transcript referred to with a stipulation that all objections to evidence made in those transcripts would be waived. The court then announced that it would finish the reading of the transcripts by next morning.[1] At that time it promptly found the defendant guilty of second degree murder, no argument having been presented by either side. A little less than two months later, a probation report having been filed, the court concurred with the probation officer's recommendation and committed defendant to the Youth Authority. Defendant immediately appealed. Bail on appeal was set at $15,000, plus penalty assessment. The record before us indicates that defendant made bail. On defendant's representation that he was indigent, we appointed counsel on appeal.

Appointed counsel raises four issues: 1. that his client did not personally join in the stipulation waiving all objections to evidence appearing in the transcripts;[2] 2. that the record does not show that appellant knew that, as a mere aider and abettor he could be convicted as a principal; 3. that, on appeal, defendant was not provided with an adequate trial record; and 4. that the evidence was insufficient to sustain the conviction.

### DISCUSSION

As our recital of the circumstances demonstrates the court and counsel went through an elaborate charade with a predetermined result: that defendant would be found guilty of second degree murder and, instead of being sentenced to prison, would be committed to the Youth Authority. That being so we can see no reason why we should go on playing games at the appellate level and consider this case as if there had been an adversary trial. We do not say that appellant is not properly before us, although he did not obtain the certificate of probable cause required by section 1237.5 of the Penal Code. Theoretically he did not enter a plea of guilty and therefore was not required to comply with this section. Nevertheless we should not blind ourselves to reality and discuss on their merits arguments

---

[1] The transcript in the Thomas matter is 425 pages long; that of defendant's preliminary hearing 131 pages.

[2] The only objection to which defendant points is one made at his preliminary hearing where his then counsel "for the purpose of making a record" objected to the legality of defendant's arrest which, in turn, had led to an incriminating statement.

which could not be put forward if the record reflected technically what it shows in substance.[3]

■ Thus we think that we may safely ignore defendant's first point. He concedes that—apart from his second point—the record reflects a waiver of constitutional rights complying in all respects with *Boykin* v. *Alabama*, 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]. That concession having been made, what difference does it make whether or not in an adversary proceeding an attorney can, without the client's express consent, waive an objection of constitutional dimension? (Cf. *Henry* v. *Mississippi*, 379 U.S. 443, 451-452 [13 L.Ed.2d 408, 414-416, 85 S.Ct. 564].) The stipulation waiving all objections is a perfectly obvious integral part of the bargain: it removed from possible appellate consideration any errors in the admission of evidence against defendant and thereby added cohesion to the deal.

■ Defendant's second point has no merit. To be sure the prosecution's theory was that Thomas did the actual killing and that defendant merely aided and abetted him.[4] While a lay person might reasonably think that an aider and abettor is not a principal, defendant acknowledged that he had discussed all of the facts of the case with his attorney who had advised him concerning the applicable law. Further he was advised by the prosecutor that in the latter's opinion the record contained evidence to convict him of

---

[3]What we mean by a plea bargain must be distinguished from other types of submissions on transcripts, which vary all the way from truly adversary proceedings where the defense simply does not feel that it can do any better than it did at the preliminary hearing or wishes to argue that the facts adduced at that hearing do not prove the defendant's guilt, to submissions which are, in truth, a slow plea of guilty. (*In re Mosley*, 1 Cal.3d 913 [83 Cal.Rptr. 809, 464 P.2d 473].) The latter type of submission is not, however, necessarily the result of a bargain with a predetermined result, but may be made as indeed the facts in *Mosley* show—quite unilaterally in the hope that by saving the court's time, or for other reasons, the defendant may gain the advantage of a conviction for a less serious offense or favorable consideration in the matter of punishment. The thoughts expressed in this opinion apply only to the situation presented by this record, which we interpret to show, beyond a doubt, that when the proceedings started, the result was never in question, subject perhaps only to disclosures of hitherto unknown facts in the probation report. We should add that we are in no way critical of anybody connected with the proceedings. At the time they took place the cloud of uncertainty which engulfed the validity of plea bargains which, nevertheless, were an indispensable part of the administration of criminal justice, left the parties no choice.

[4]The killing occurred at the intersection of Santa Monica Boulevard and Rexford Drive in Beverly Hills when the victim, who had been kidnaped by Thomas and defendant, tried to escape from a car which defendant was driving. In Thomas' jury trial, Thomas had testified that the kidnaping was a fake in order to eliminate certain middle men in a marijuana transaction which never took place. He had also maintained that at the time of the murder he was no longer in the car. The fact that he thus had apparently managed to create a reasonable doubt in the mind of the jury, in no way precluded the trial court in this case from not sharing it.

murder in the second degree. We think the record adequately shows an intelligent waiver.

■ Defendant's third point had merit when it was made, but the matter has now been corrected. As already noted the matter was submitted on the transcript of the Thomas trial. While physically there was such a transcript in our record, it had never been marked as an exhibit during defendant's "trial." After the oral argument in this matter the Attorney General obtained a declaration from the trial judge to the effect that the transcript we have is the one which he considered in deciding the case. We think this adequately cures the cosmetic defect in the record.

■ Defendant's last point also appears to be one which he should not be able to raise in a plea bargain situation. Had he simply pleaded guilty to second degree murder on the court's promise that he would be committed to the Youth Authority, the record would contain no evidence whatsoever supporting the conviction.

The judgment is affirmed.

Aiso, J., and Reppy, J., concurred.

On September 17, 1971, the opinion was modified to read as printed above.