[Crim. No. 24259. Second Dist., Div. Five. Sept. 18, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
ROLAND ROSS VANLEY, Defendant and Appellant.

COUNSEL

Sharon E. Giannetta, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Russell Iungerich, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

KAUS, P. J.—Appeal from commitment to Atascadero State Hospital after defendant was found not guilty of vehicle theft (Veh. Code, § 10851) by reason of insanity, but committed to Atascadero State Hospital as not "fully recovered." (Pen. Code, § 1026.)[1]

### FACTS

Our only source for the events which led to the proceedings against defendant is the transcript of his preliminary hearing.

At 7:30 p.m., on October 14, 1972, Greg Ellison left a sports car parked in front of the Platterpus Record Store on Hollywood Boulevard. He left the key in the ignition. Defendant, without permission, drove the car one block to Vermont Avenue where he stopped for a red light, and where Ellison, who had pursued him on foot, caught up with him. Ellison effected a citizen's arrest of defendant. Although defendant attempted to kick Ellison at one point, he also apologized and "mumbled something else." Cross-examination revealed that in Ellison's opinion defendant acted irrationally and displayed an "apathetic attitude."

Defendant was bound over on charges of grand theft, auto (Pen. Code, § 487, subd. (3)), and vehicle theft, sometimes known as "felony joy riding" (Veh. Code, § 10851). He pleaded not guilty on November 15, 1972. On November 27, on motion of the defense, Doctors Markman and Abe, two psychiatrists, were appointed to examine him. Trial setting was continued to December 22, 1972.

On that day both doctors had submitted their written reports. Their ultimate conclusions are excerpted below.[2] In summary, both found that

---

[1]Defendant appealed, in propria persona, "from the finding of guilt . . . ." However, a liberal reading of the entire notice of appeal indicates that defendant's complaints are directed to all proceedings which led to his present commitment at Atascadero State Hospital. The People suggest that an order committing a defendant who has been found not guilty by reason of insanity, but not recovered, is not appealable. They mistakenly rely on *People* v. *Scarborough*, 52 Cal.App.2d 210 [125 P.2d 893]; that case was decided before the extension of section 1237, subdivision (1), of the Penal Code to "the commitment of a defendant for insanity . . . ." (Stats. 1968, ch. 315, p. 685, § 2.)

[2]Dr. Markman: "(1) It would appear that defendant was insane at the time of commission of the alleged offense, in that his mental disorder precluded an ability to know and understand the nature and quality of his behavior, although he probably was able to distinguish between right and wrong.

"(2) If found insane, he has not 'fully recovered his sanity' within the meaning of Section 1026, Penal Code, in that he does represent a menace to the health and safety of others by virtue of his mental disorder, and related unpredictability.

"(3) Defendant is presently insane within the meaning of Section 1368, Penal

defendant had been legally insane at the time of the commission of the offense, was mentally incompetent to stand trial, and would be considered as not having "fully recovered his sanity" if tried and, presumably, acquitted by reason of insanity. Thus, unless the defense came up with a miracle on the question of guilt or either party were to offer a different psychiatric opinion, it was, as of December 1972, a foregone conclusion that defendant, if tried as a criminal, would be found not guilty by reason of insanity and indefinitely committed to a state hospital pursuant to the provisions of sections 1026 and 1026a of the Penal Code—provided, of course, he chose to plead insanity. No such additional psychiatric evidence was ever ordered or—as now appears—even contemplated.

At the hearing of December 22, 1972, defense counsel suggested that it appeared from the reports that there was "a good possibility that the defendant would fall under the provisions of [section] 1368 of the Penal Code. . . ." He wondered whether the court "would institute at this time, 1368 proceedings." A few seconds later, appropriate waivers having been made by defense counsel, the court found that defendant was "presently insane pursuant to Section 1368 of the Penal Code" and ordered him committed until his sanity was restored.

On May 17, 1973, the acting medical director of the Atascadero State Hospital certified defendant as sane "[i]n accordance with Section 1372 of the Penal Code." At the same time he transmitted to the court a six-page summary of defendant's hospitalization, diagnosis and treatment. This summary included a staff finding that defendant "as before, . . . by the nature of his illness, will not be able to offer much or cooperate meaningful with counsel in his own defense."[3] Indeed, even the acting

---

Code, in that I doubt that he is fully aware of the nature and purpose of the proceedings taken against him and I feel that he is unable at this time to cooperate with counsel in a rational manner in presenting a defense.

"(4) Defendant's mental capacity to form the specific intent to 'steal' was impaired by virtue of his mental disorder."

Dr. Abe: "Based on examination of defendant, the testimony contained in the Preliminary Transcript and information contained in the arrest record, defendant was insane at the time of commission of the offense. Although he had the mental capacity to form the specific intent to steal, he could not do so in a meaningful and mature manner.

"Defendant is presently insane according to Section 1026 and 1026a.P.C. Defendant has a Schizophrenic mental illness, which can cause him to be a menace to the health and safety of others. Defendant is presently insane according to Section 1368 P.C. Although he has some understanding of the nature and purpose of the proceedings taken against him, he is not able to cooperate in a rational manner with counsel in presenting a defense."

[3] As will be seen, our disposition of the case makes it immaterial whether the acting medical director's conclusion of May 17, 1973, was defensible.

medical director found it advisable to send a covering letter to the court advising it that defendant was "being returned . . . on psychotropic medication and it is important that the patient remain on this medication, both for his personal benefit and to enable him to be certified under Section 1372 of the Penal Code."[4] It is difficult to interpret the documents with which defendant was returned to court as saying more than that if he was kept on four different kinds of medication, he would not give any trouble.

On May 24, 1973, the case was set "for further proceedings" on June 13, 1973. On that day matters progressed smoothly. The proceedings are copied below.[5] In exactly six pages of reporters' transcript the following occurred:

---

[4]The medication was as follows: ". . . Thorazine Concentrate, 400 mg four times daily; Stelazine Concentrate, 10 mg twice daily; Artane, 4 mg twice daily; and Thorazine, 25 mg intramuscularly every four hours as needed for agitation."

[5]"THE COURT: The People against Roland Ross Vanley.

"DEFENSE COUNSEL: Your Honor, the case is here on a 1368. I believe, your Honor, also that a not guilty by reason of insanity plea has been entered at sometime during the proceedings; however, if the record does not so reflect, such a plea will be entered at this time.

"I have talked to my client, and also Mr. Howard, and there will be a submission on all issues, the 1368 issue, the guilt phase, and also the insanity phase will be a submission.

"May the record show the defendant is in court with counsel.

"THE COURT: The Court is in receipt of a report signed by the acting medical director of Atascadero State Hospital. He has been returned to court with a finding that he is able to understand the nature of the charges against him, and that he can cooperate rationally with his attorney in his defense.

"Have you had an opportunity to discuss the matter with the defendant?

"DEFENSE COUNSEL: I have, your Honor.

"THE COURT: And you concur in that finding?

"DEFENSE COUNSEL: I do, your Honor.

"THE COURT: All right. We will proceed then.

"DEFENSE COUNSEL: Thank you. Your Honor, also I have discussed with Mr. Vanley the question of his innocence or guilt and, if the Court please, it is Mr. Vanley's wish that the Court sitting without a jury determine the innocence or guilt of Mr. Vanley based solely on the evidence contained in the preliminary transcript, transcribed on Wednesday, November 1, 1972. There will be a jury waiver and rights of confrontation.

"MR. HOWARD: Mr. Ronald Ross Vanley, is that your true name?

"THE DEFENDANT: Roland Ross Vanley.

"MR. HOWARD: Sir, your attorney has indicated that it is your desire that we submit the matter of your guilt or innocence on Case No. A289819 on the transcript taken at the time of the preliminary hearing.

"Do you remember the preliminary hearing?

"THE DEFENDANT: Yes.

"MR. HOWARD: And you have discussed this matter with your attorney, have you?

"THE DEFENDANT: Yes.

"MR. HOWARD: As to submitting the matter?

"THE DEFENDANT: Yes.

1. Counsel—not defendant—entered a plea of not guilty by reason of insanity;

2. Counsel submitted, without express concurrence of defendant "all issues, the 1368 issue, the guilt phase, and also the insanity phase";

"MR. HOWARD: And are you agreeable with that procedure?

"THE DEFENDANT: Yes.

"MR. HOWARD: You realize you have certain constitutional rights that you will be giving up if you follow this procedure; you understand that?

"THE DEFENDANT: Well, yes.

"MR. HOWARD: One of those rights is the right to a jury trial. You understand you have a right to a trial by a jury of twelve persons? Do you at this time waive and give up that right?

"THE DEFENDANT: Yes.

"DEFENSE COUNSEL: Counsel joins.

"MR. HOWARD: The People join.

"Sir, you also have a constitutional right to a Court trial if you so desire.

"Do you waive at this time that constitutional right?

"THE DEFENDANT: I —

"DEFENSE COUNSEL: I believe this will be a Court trial.

"MR. HOWARD: Yes, that's right.

"You wish to have a Court trial on the transcript.

"You also have a right to be confronted by the witnesses against you, and to cross-examine them through your attorney; you understand that?

"THE DEFENDANT: Yes.

"MR. HOWARD: If we proceed by way of a submission on the transcript, the witnesses will not be called, and you will, therefore, not have an opportunity to cross-examine them, you will be waiving your right of confrontation; you understand that?

"THE DEFENDANT: (Nods head.)

"MR. HOWARD: And do you at this time waive and give up your right of confrontation?

"THE DEFENDANT: Yes.

"MR. HOWARD: Does counsel join?

"DEFENSE COUNSEL: Counsel joins.

"MR. HOWARD: Sir, the transcript contains the testimony of certain People's witnesses, and the evidence indicates that you are guilty, as in the transcript.

"Now, if you agree to this submission, the Judge will find you guilty on the transcript; you understand that?

"THE DEFENDANT: Yes.

MR. HOWARD: Now, because of that fact you will be incriminating yourself, and thus waiving your constitutional privilege against self-incrimination; you understand that?

"THE DEFENDANT: Yes.

"MR. HOWARD: Do you at this time waive and give up your constitutional privilege against self-incrimination?

"THE DEFENDANT: Yes.

"MR. HOWARD: Your Honor, at this time the People offer to stipulate, and request defense counsel to stipulate, that the Court may read and consider the transcript of the preliminary hearing in this matter, and render a decision therein;

"Furthermore, that all witnesses called, sworn, and testified at the preliminary hearing be deemed called, sworn, and testified in court here today, in accordance with their testimony set forth in the preliminary hearing transcript;

3. The court decided to proceed after counsel assured it that he had had an opportunity to talk to his client and that he concurred with the finding that defendant was able to understand the nature of the charges against him and could cooperate in his defense;

"Furthermore, all exhibits received into evidence at the preliminary hearing be deemed received in evidence here today.

"DEFENSE COUNSEL: Counsel so stipulates.

"THE COURT: Let the record show that the Court has read and considered the reporter's transcript of the preliminary hearing in this matter.

"MR. HOWARD: The People rest, your Honor.

"DEFENSE COUNSEL: Defense rests, your Honor.

"THE COURT: Do you wish to argue the matter?

"DEFENSE COUNSEL: No, no argument.

"THE COURT: The Court finds the defendant guilty as charged in Count II of the Information, violation of Section 10851 of the Vehicle Code; not guilty as to Count I.

"DEFENSE COUNSEL: Your Honor, in relation to the additional plea entered of not guilty by reason of insanity, it is the defendant's desire at this time, your Honor, to submit that matter solely on the doctors' reports, the doctors being George Y. Abe and Dr. Ronald A. Markman. The reports I believe are contained in the Court's file at this time. The defendant wishes to submit the issue of his sanity solely on the information contained in those reports, and in doing so he would give up his right to a jury trial on the issue of insanity.

"MR. HOWARD: The People are agreeable with that, your Honor.

"THE COURT: Very well.

"MR. HOWARD: Mr. Roland Ross Vanley, your counsel has indicated it is your desire to submit the matter of your guilt or not guilty by reason of insanity as to Case A289819 to the Judge on the basis of the doctors' reports, which are contained in the file.

"Now, if you do this, you will again be waiving a constitutional right that you have. That is a right to a jury trial. Do you understand that?

"THE DEFENDANT: Yes.

"MR. HOWARD: Do you at this time waive and give up your right to a jury trial in the matter of the not guilty by reason of insanity hearing?

"THE DEFENDANT: Yes.

"DEFENSE COUNSEL: Counsel joins.

"MR. HOWARD: The People join.

"At this time the People offer to stipulate and request defense counsel to stipulate that the Court may read and consider the reports of the two doctors previously mentioned, and decide the matter of the guilt or innocence of the defendant on the issue of insanity on the reports of those doctors.

"DEFENSE COUNSEL: So stipulated.

"THE COURT: The reports that you are referring to are the reports of Dr. Ronald Markman, M.D., and Dr. George Y. Abe, M.D.?

"MR. HOWARD: Yes, your Honor.

"THE COURT: The Court has read and considered each of those reports.

"MR. HOWARD: The People rest, your Honor.

"DEFENSE COUNSEL: The defense rests, your Honor.

"THE COURT: Based on the reports of the two doctors, the Court finds the defendant not guilty by reason of insanity at the time of the commission of the offense.

4. Appropriate *Boykin* waivers were obtained from defendant so that the issue of guilt could be submitted on the transcript of the preliminary hearing;

5. Without argument by either counsel defendant was found guilty of having violated section 10851 of the Vehicle Code;

6. The issue of defendant's insanity at the time of the offense was submitted on the original reports of Doctors Markman and Abe;

7. Defendant personally waived his right to a jury trial on the issue of his sanity;

8. Defendant was found not guilty by reason of insanity; and

9. The court found the defendant had not fully recovered his sanity and committed him to Atascadero State Hospital pursuant to section 1026 of the Penal Code "until [defendant] shall fully regain his sanity."

Defendant is still involuntarily confined.

ISSUES

On appeal defendant raises the following issues:

1. California's pretrial commitment procedure (Pen. Code, § 1367 et seq.) is unconstitutional and; as applied to defendant, denied him due process and equal protection of the law;

2. Defendant's plea of not guilty by reason by insanity was not put in as prescribed by section 1018 of the Penal Code;

3. Before the submission of the issue of insanity on June 13, 1973, defendant should have been informed of the possible consequences of the several waivers of rights which the submission entailed;

4. After defendant had been found guilty of the Vehicle Code violation, he should have been tendered an opportunity to withdraw his plea of not guilty by reason of insanity;

5. Under the circumstances of this case, defendant was entitled to a hearing on whether or not he had recovered his sanity; and

---

"Further, based on the report from the Atascadero State Hospital, the Court finds that the defendant has not fully regained his sanity. Accordingly, the defendant is committed to the Atascadero State Hospital pursuant to Section 1026 of the Penal Code until he shall fully regain his sanity.

"MR. HOWARD: Thank you, your Honor.

"DEFENSE COUNSEL: Thank you, your Honor."

6. Trial counsel was ineffective within the meaning of *People* v. *Ibarra,* 60 Cal.2d 460, 464-465 [34 Cal.Rptr. 863, 386 P.2d 487].

## DISCUSSION

### I

Defendant's attack on the constitutionality of the pretrial commitment procedures prescribed by Penal Code section 1367 et seq. is based on the holding of the United States Supreme Court in *Jackson* v. *Indiana,* 406 U.S. 715 [32 L.Ed.2d 435, 92 S.Ct. 1845]. When defendant was committed in December 1972, these statutory provisions did not expressly comply with the mandate of that decision. Nevertheless, on February 7, 1973, while defendant was at Atascadero, our own Supreme Court decided *In re Davis,* 8 Cal.3d 798 [106 Cal.Rptr. 178, 505 P.2d 1018], which interpreted our Penal Code provisions in the light of *Jackson* v. *Indiana, supra.* As interpreted by *Davis* our law is entirely in accord with that decision.

A subsidiary claim by defendant that his pretrial commitment deprived him of his right to a speedy trial, is also disposed of by reference to *Davis.* (*Ibid.* p. 809.)

### II

■   Defendant was under no compulsion whatever to plead not guilty by reason of insanity. (Cf. *People* v. *Redmond,* 16 Cal.App.3d 931, 937-938 [94 Cal.Rptr. 543].)

The plea, however, was entered by his attorney at the outset of the proceedings of June 13, 1973, as follows: "I believe, your Honor, also that a not guilty by reason of insanity plea has been entered at sometime during the proceedings; however, if the record does not so reflect, such a plea will be entered at this time."[6]

In *People* v. *Gaines,* 58 Cal.2d 630 [25 Cal.Rptr. 448, 375 P.2d 296], the Supreme Court, while holding in a four to three decision that a plea of not guilty by reason of insanity could be withdrawn by counsel, said unequivocally: "It is clear that a criminal defendant's plea of not guilty by reason of insanity must be made by the defendant *himself* in open court. Section 1016 of the Penal Code provides that there are 'five kinds of pleas' to an indictment, information, or complaint, and the fifth enumerated plea

---

[6]Counsel was in error as far as any previous entry of an insanity plea was concerned.

is 'Not guilty by reason of insanity.' Section 1017 sets forth the proper form for each of these five pleas, and the immediately following section, 1018, flatly directs that unless otherwise provided by law, 'every plea' must be put in by 'the defendant himself in open court.' " *(Id.* at p. 636. Italics in original.)

At no time during the proceedings did defendant voice concurrence with the plea that had been entered by his attorney. His cooperation with respect to the insanity plea was not requested until much later when it was pointed out to him that in submitting the issue of insanity on the doctor's reports, he would be waiving his right to a jury trial on that issue. This is therefore not a case such as *People* v. *Reeves,* 64 Cal.2d 766, 772 [51 Cal.Rptr. 691, 415 P.2d 35], or *People* v. *Martin,* 230 Cal.App.2d 62, 63 [40 Cal. Rptr. 700], which held that the purpose of the requirement of a personal plea by defendant is to assure that the plea is the defendant's own, and that this end is served if the defendant expressly authorizes or adopts counsel's statement of his plea.

Since defendant's present confinement is the direct result of his attorney's "success" on the improperly entered plea, the judgment must be reversed.

## III

Defendant also claims that, regardless of who put in the plea of not guilty by reason of insanity, the plea should not have been accepted without the record showing that he was aware of the fact that a successful assertion of the plea could result in an indefinite commitment in a state hospital for a 90-day minimum and a lifetime maximum.

The point has merit. In *People* v. *Guerra,* 21 Cal.App.3d 534, 539-540 [98 Cal.Rptr. 627], this division rejected a defendant's contention that under the principles of *Boykin* v. *Alabama,* 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], and *In re Tahl,* 1 Cal.3d 122, 133 [81 Cal.Rptr. 577, 460 P.2d 449], a defendant who pleads guilty must be informed of the nature and duration of the punishment which could result from his plea. Finding no authority to the contrary, we assume that *Guerra* is still good constitutional law. It does not, however, solve the present problem.

In *In re Yurko,* 10 Cal.3d 857, 864 [112 Cal.Rptr. 513, 519 P.2d 561], the Supreme Court held "as a judicially declared rule of criminal procedure" that an accused, before responding to an allegation of a prior con-

viction, must be advised of the consequences of a finding of the truth of such allegation.[7]

We find the reasons for the judicially declared rule of criminal procedure established in *Yurko* to be even more persuasive in a situation such as the one at bar.[8] As a matter of common sense, any defendant who pleads guilty to a crime knows that some punishment will follow; similarly, a person charged with a prior conviction most likely knows that the purpose of the charge is to enhance punishment in some fashion. By contrast, a person who pleads *not* guilty by reason of insanity may figure that the plea is simply another way to "beat the rap." We can hardly impute to the average defendant enough legal sophistication to realize that the very evidence which establishes the truth of the plea, can also confine him in a state hospital for the minimum period of 90 days (Pen. Code, § 1026a) and that he can remain involuntarily committed at such hospital for the rest of his life unless he successfully uses his annual opportunity to convince three-fourths of a jury that the hospital staff, which refuses to release him absent judicial compulsion, is wrong in its diagnosis. (See *In re Franklin*, 7 Cal.3d 126, 133-134, 148 [101 Cal.Rptr. 553, 496 P.2d 465].)

These observations are particularly true in the case of a defendant who has been returned to court as mentally fit to stand trial. He can hardly be expected to appreciate that a positive finding of fitness for trial in no way militates against an equally positive finding of unfitness to be returned to society under the standard approved in *In re Franklin, supra,* 7 Cal.3d 126, 145—"whether the person . . . has improved to the extent that he is no longer a danger to the health and safety of others, including himself."

Apart from the fact that the principle of *Yurko* demands that any defendant who pleads not guilty by reason of insanity be advised that he thereby runs a risk of a possible lifetime commitment, the error in not advising this defendant was compounded by the fact that the issue of defendant's sanity at the time of the trial was to be submitted to the court on no evidence except the two reports from Doctors Markman and Abe— now six months old—neither of which furnished any basis for finding defendant presently sane. Thus, under the circumstances of this case, the

---

[7]In a footnote the court stated that it did not reach the issue of "whether there exists a constitutional compulsion that an accused be so advised . . . ." (*Id.* at p. 864, fn. 7.)

[8]Of course, it is extremely doubtful that defendant would have appreciated the significance of the advice which we hold should have been given. Clearly, however, the People cannot have it both ways: if defendant was mentally unfit to be tried, he should not have been in court on June 13, 1973; if he was fit to be tried, he, in theory at least, would have understood the necessary admonition.

insanity plea was, in effect, an admission of present insanity which left the court no choice except to send defendant to a state hospital.

This fact brings into focus the inadequacy of defendant's waivers of applicable constitutional rights relating to the insanity phase of the trial.. As the record shows (see fn. 5, *ante*) defendant only waived his right to a jury trial on the issue of insanity at the time he committed the offense. That issue was then submitted to the court on the reports.

Although it is constitutionally permissible to put the burden of proving insanity at the time the criminal offense was committed on the defendant (*Leland* v. *Oregon*, 343 U.S. 790, 798-799 [96 L.Ed. 1302, 1308-1309, 72 S.Ct. 1002]; *In re Franklin, supra,* 7 Cal.3d 126, 141) the trial of the issue of insanity is nevertheless an integral part of a criminal prosecution to which the Sixth Amendment's right to confrontation undoubtedly applies. At no time, however, was it pointed out to defendant that by submitting on the two reports, his attorney was purporting to waive for him any opportunity to cross-examine the two psychiatrists.[9]

The People's argument addressed to the issues under discussion misses the point. They first distinguish *People* v. *Redmond, supra,* 16 Cal.App.3d 931, which held that a defendant, mentally fit to stand trial, must be permitted to withdraw an insanity plea even if such withdrawal leaves a prior jury verdict of guilt inviolable. In such an event the court must permit the insanity plea to be withdrawn if the defendant affirmatively demonstrates, by making appropriate *Boykin* waivers, that he "is making a free and voluntary choice with adequate comprehension of the consequences, . . ." (*Ibid.,* p. 938.)

The fact that *Redmond*'s requirement for a showing that the defendant was aware of the consequences of his actions was pronounced in a slightly different procedural setting, hardly helps the People. What is important is that *Redmond* was based on precisely the same principles from which our views with respect to the case at bar are derived: that a defendant may not be permitted to take certain fundamental steps without being made aware of their consequences and of the constitutional rights he is waiving by taking them.

---

[9]In the context of this case a cross-examination of the psychiatrists concerning their opinion of defendant's sanity in June 1973, would not necessarily have been ceremonial. Neither had seen defendant for six months. Although, as noted, we as laymen cannot put our finger on any significant change that had taken place during the first hospitalization at Atascadero, we certainly cannot say that there is nothing in the record which might have changed the doctors' views concerning defendant's sanity under the standard approved in *In re Franklin, supra,* 7 Cal.3d 126, 145.

The people also argue that the fact that defendant had counsel when he entered his plea of not guilty by reason of insanity raises a presumption that counsel adequately informed him of the consequences of such a plea. As a general principle, this submission in untenable in the light of *In re Yurko, supra,* 10 Cal.3d 857, 863, and every other case which has applied the teaching of *Boykin* v. *Alabama, supra,* 395 U.S. 238. As an argument that *Boykin* and the cases which follow and apply its rule should not lead to the result we reach, it has already been dealt with.[10]

## IV

Defendant's claim that after he had been found guilty of the Vehicle Code violation, he should have been tendered an opportunity to withdraw his insanity plea, has no merit. On this particular point he, in turn, relies on *People* v. *Redmond, supra. Redmond,* however, merely holds that where a defendant, who has been found guilty, would rather suffer criminal punishment than maintain his insanity plea, the court cannot prevent him from doing so. Nothing in the opinion suggests that the court has an affirmative duty to advise him of its impotence.

## V

In spite of *In re Franklin, supra,* 7 Cal.3d 126, defendant claims that he should have been given a hearing on the issue of his present sanity before being sent to Atascadero for the minimum 90-day commitment. As presented, the argument has no merit. Defendant would have us make a distinction between the seriousness of the offense which Franklin had committed and the relative harmlessness of his own criminal conduct. He argues that, as a practical matter, had the issue of insanity never been raised, he would not have been found guilty of anything more serious than a violation of Penal Code section 499b [misdemeanor joy riding], an offense which carries a maximum punishment of three months.

Even if we were not bound by the Supreme Court's holding in *Franklin,* we would feel most reluctant to say that the question of whether or not an insanity-acquitted defendant is entitled to a special hearing on his present sanity depends on a comparison between the minimum term of involuntary confinement in a state hospital and the maximum sentence for the least serious crime of which the defendant may have been guilty.

---

[10]We note that the rule announced by the Supreme Court in *Yurko* was expressly made prospective only. Since this case must be reversed because of the statutory insufficiency of the insanity plea, it is unnecessary for us to decide whether the reasons which compelled a prospective application of *Yurko* are equally valid in the situation which we consider. (See *In re Yurko, supra,* 10 Cal.3d at p. 865, fn. 9.)

## VI

In a communication addressed to this court which has been brought to counsel's attention with a request for appropriate comments, defendant asserts that counsel was ineffective in suggesting defendant's mental inability to stand trial and in asserting the insanity plea—allegedly, over defendant's express objection. Defendant, as does his present counsel with respect to the point last discussed, points to the fact that he faced nothing worse than a three-month sentence for misdemeanor joy riding.

The various dilemmas faced by conscientious and ethical attorneys retained to defend clients with psychiatric problems which affect their ability to stand trial as well as their ultimate guilt, are extensively discussed in Chernoff and Schaffer, *Defending The Mentally Ill: Ethical Quicksand* (1971) 10 Amer.Crim.L.Rev. 505. The problems are obviously compounded in a case such as this where it seems highly likely that if nothing had ever been said about defendant's psychiatric problems, his confinement resulting from the October 14, 1972, episode would have been a fraction of what it has turned out to be. These difficulties would be hard enough to solve if we had a record, such as the one that was made in *In re Saunders*, 2 Cal.3d 1033 [88 Cal.Rptr. 633, 472 P.2d 921], by which the attorney's entire handling of the case—in and out of court—can be subjected to a critical examination. We have nothing of the sort: all we know are the words spoken on the record. These may have been the result of nothing but a knee-jerk reaction of counsel to a client with mental problems. On the other hand they may have been the result of thoughtful reflection—wise or not—on his duties as an officer of the court and as an attorney charged with the best interests of a client. On the present record we cannot—and in view of our disposition of the case need not—resolve the question whether defendant has been effectively represented so far.

The judgment is reversed.

Stephens, J., concurred.

**HASTINGS, J.,** Concurring.—I concur in the result, but for a different reason than stated by the majority. The record does not support the acting medical director's conclusion that defendant was sane enough to stand trial. The summary of the staff finding (quoted in the majority opinion) said, "he [defendant] will not be able to offer much or cooperate meaningfully with counsel in his own defense." One test of "sanity" that must be met before a defendant can stand trial, is that he is able to assist his attorney in conducting his defense. (*People* v. *Pennington*, 66 Cal.2d 508 [58 Cal. Rptr. 374, 426 P.2d 942].) Other bits and pieces from the record on the

medication required by the defendant and footnoted in the majority opinion lend further support to the conclusion of the staff report. I would reverse the decision of the trial court for that reason.

A petition for a rehearing was denied October 11, 1974, and respondent's petition for a hearing by the Supreme Court was denied November 13, 1974. Mosk, J., was of the opinion that the petition should be granted.