[Crim. No. 11566. Fourth Dist., Div. One. Feb. 20, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
MARY RODENA LOMBOY, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Kenyon C. Keller, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and John W. Carney, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WORK, J.**—Must the court advise a defendant the maximum possible length of commitment following her plea of not guilty by reason of insanity exceeds the longest term of imprisonment to which she could be sentenced for the underlying crime?

We hold advisement of the disparity in the lengths of possible custodial consequences is essential to insure a defendant knows the true potential of such a plea even though she may be generally aware "some" institutionalization is possible. Finding no such advisement here we remand for further proceedings for the following reasons.

Charged with murder for knifing a friend, Mary Rodena Lomboy personally pleaded not guilty and not guilty by reason of insanity after being advised she could be confined in a mental institution for life if convicted of murder but found insane at the time of the killing.

Three months later she waived jury trial on both phases of trial at which time her counsel alerted the trial court to the probability the guilt phase would be submitted, in part, on the transcript of preliminary proceedings. These submissions were an apparent exchange for the prosecution's stipulation limiting the trial court to finding Lomboy guilty of no crime greater than voluntary manslaughter. In a commendable effort to keep the record "clear" the court suggested filing an amended complaint.

Although an amended information was then filed no attempt was made to rearraign Lomboy and, following an abbreviated court trial during which the court received the preliminary hearing transcripts and additional testimony, she was convicted of voluntary manslaughter.[1]

The court then proceeded to the sanity phase without attempting to advise Lomboy of the potential consequences of a finding of insanity in view of the maximum penalty reduction in the underlying charge, i.e., murder—life, to voluntary manslaughter—six years (less one-third for behavioral credits), as contrasted with no reduction as between the institutional commitment on insanity for murder—life, versus insanity for voluntary manslaughter—life. As predicted, the parties submitted the issue totally on reports evidencing Lomboy's insanity. She was not advised of her right to confront these witnesses because the court (and counsel) agreed there was no need to do so where the sole evidence introduced without cross-examination was presented on her behalf in support of her plea of not guilty by reason of insanity.

---

[1] In spite of the fact Lomboy's attorney possessed current psychiatric reports clearly attesting to her legal insanity at the time of the offense and the record was replete with evidence of her intoxication at the time of the killing, her counsel elected not to raise a diminished capacity defense to the specific intent element of voluntary manslaughter.

The parties then immediately proceeded to determine whether Lomboy had presently recovered her sanity, again submitting the issue solely on the same medical reports. This time Lomboy was advised of, and waived, her legal and constitutional rights. Simultaneously, however, the trial court twice wrongly advised her the maximum consequence of an adverse finding could result in a maximum confinement of six years. Lomboy's counsel told the court he had discussed the six-year maximum potential commitment with her and, after an off-the-record consultation between court, prosecutor and defense counsel, Lomboy was again advised, and stated she understood the maximum custodial consequence of her plea of not guilty by reason of insanity was six years.

As anticipated the court promptly determined Lomboy had not yet recovered her legal sanity and committed her to the California Department of Mental Health for a period the trial court, defense counsel, prosecutor and, last but not least, Mary Lomboy, expected not to exceed six years.

Lomboy claims shock upon learning that in fact her commitment and custodial confinement may last her lifetime. (The longest term of imprisonment for the underlying charge—six years plus two-year increments for the rest of her life if she does not recover her legal sanity *and* is found to represent a substantial danger of physical harm to others. Pen. Code, § 1026.5, subd. (b)(1); *In re Moye* (1978) 22 Cal.3d 457 [149 Cal.Rptr. 491, 584 P.2d 1097].)

Therefore, it is apparent:

(1) Lomboy was correctly advised when arraigned for murder that a finding of not guilty by reason of insanity could result in a lifetime mental commitment.

(2) The maximum consequence of her not guilty by reason of insanity plea, on initial arraignment, would be no more than her possible maximum imprisonment for her conviction of murder and might well be less assuming her earlier restoration to sanity.

(3) Lomboy was never rearraigned at the time of the filing of the amended information charging voluntary manslaughter. Thus, she was never advised the possible maximum custodial consequence of a finding

of not guilty by reason of insanity could greatly exceed that of a conviction of voluntary manslaughter. 'She never personally entered a plea of not guilty by reason of insanity to the new charge.

(4) After Lomboy's attorney told·her her maximum commitment was six years without contrary advisement from the court and without being told of her right to confront witnesses, she submitted the sanity issue solely on psychiatric reports designed to insure a finding she was legally insane when the crime was committed. It is apparent these same reports concluded she had not yet recovered her sanity and her commitment was inevitable.

(5) The reasonableness of this mentally disturbed layperson's anticipation of maximum confinement in a mental institution equivalent to the maximum allowable term on conviction of voluntary manslaughter is evident from the joint assurance of the trial court, defense counsel and prosecutor.

A plea of not guilty by reason of insanity must be entered by a defendant personally and not through counsel alone. (*People* v. *Gauze* (1975) 15 Cal.3d 709, 717 [125 Cal.Rptr. 773, 545 P.2d 1365].) Although the present insanity of a defendant may make the validity of the decision-making process between a choice of entering or not entering such a plea somewhat suspect, this procedure is legislatively mandated by Penal Code section 1018. Further, the rights of legally insane persons not to enter such a plea is recognized in *In re Moye, supra*, 22 Cal.3d 457, 468. There the unanimous court recognized pragmatic considerations of length of the mental confinement may well deter persons from entering insanity pleas where their release after a lesser maximum term is guaranteed under the determinate sentencing law.

Where an information is amended, 'failure to rearraign and require a defendant to plea to the amended pleading is not prejudicial unless substantial rights of a defendant are prejudiced. (Pen. Code, § 1009; *People* v. *Walker* (1959) 170 Cal.App.2d 159 [338 P.2d 536].)

■ It is obvious Lomboy was not prejudiced in the guilt phase of her trial by not being rearraigned since she was afforded all rights to which she was entitled on a plea of not guilty. We, however, find prejudice compelling reversal from the failure to rearraign and properly advise.

Lomboy her prosecution under the reduced charges in the amended pleading did not result in a concomitant reduction in the maximum possible consequences flowing from a commitment under her sanity plea. While the actual unfortunate misrepresentations in this record negate any possible lack of prejudice here, a silent record would equally compel reversal.

The People attempt to distinguish *People* v. *Vanley* (1974) 41 Cal. App.3d 846 [116 Cal.Rptr. 446] by noting Vanley never personally entered his sanity plea at any stage, it being entered by his lawyer. Thus, there is no evidence Vanley was ever told of any consequences of a not guilty by reason of insanity plea at any time. Therefore, *Vanley* and the present case have factual dissimilarities since here, on the original murder information, Lomboy was accurately advised in the context of that charge. They argue there was no duty to give Lomboy any further advisement when the underlying charge was reduced because she fully understood the direct consequences which could flow from her sanity plea, i.e., a six-year confinement equal to the maximum term of the underlying criminal charge. They claim the potential lifetime extensions beyond that term are only "indirect" consequences as to which the court is not required to inform a defendant citing *People* v. *Searcie* (1974) 37 Cal.App.3d 204 [112 Cal.Rptr. 265], which sets out examples of collateral consequences in federal cases at page 212, and *People* v. *Flores* (1974) 38 Cal.App.3d 484 [113 Cal.Rptr. 272]; *People* v. *Salazar* (1979) 96 Cal.App.3d Supp. 8 [157 Cal.Rptr. 834]; and *People* v. *Wright* (1979) 96 Cal.App.3d Supp. 17 [157 Cal.Rptr. 484]. None are persuasive on the present facts.

As examples of collateral consequences flowing from entry of a plea, we are cited to: increased penalties on a defendant as a result of a later conviction for the same offense; possibility of probation revocation; possibility of not obtaining parole; possibility of embarrassment and loss of prestige and of voting rights; possibility of undesirable discharge from the armed forces, etc. These collateral consequences fall into two categories: those which are noncustodial and nonpenal in nature and those which are custodial in nature but which may be imposed only after future volitional misconduct on the part of a defendant. Here Lomboy is subject to possible confinement in a mental institution for the rest of her natural life for causes over which she has no control, to wit: her mental condition. (It should be noted the future detention is not because she would be a danger to the public if she were released but

because she is such a danger *and* the mental health care which she received has not been successful in restoring her sanity.)[2]

The trial on her sanity directly led to Lomboy's commitment and directly exposes her to the custodial consequences of Penal Code section 1026.5, subdivision (b). Under these circumstances the possible consequences to Lomboy are neither indirect nor collateral. This being the case, failure to correctly advise was error. (*In re Yurko* (1974) 10 Cal.3d 857, 864 [112 Cal.Rptr. 513, 519 P.2d 516]; *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 605 [119 Cal.Rptr. 302, 531 P.2d 1086].)

Because of our holding we do not consider whether the court erred in failing to advise Lomboy of her right to confront witnesses at the time the sanity issue was submitted on doctors' reports. Pragmatically it appears absurd to find reversible error in a lack of admonishment resulting only in the court making a finding which is knowingly and understandingly desired by a defendant. Also, it is clear Lomboy would not have been aided by such an admonishment since she still would not have known the true potential consequences of these proceedings. (For instance, when she was advised of each right in the present sanity phase of the trial she promptly waived them.)

The case is remanded for further proceedings. After full advisement of the consequences directly flowing from her decision, Mary Lomboy shall be permitted to reaffirm her plea of not guilty by reason of insanity or to withdraw it, as she chooses.

Staniforth, J., concurred.

**COLOGNE, Acting P. J.**—I must respectfully dissent.

When Lomboy entered her pleas of not guilty and not guilty by reason of insanity (NGI) on the original charge of murder, she was advised that by entering the NGI plea "if ultimately found to be true [she] would spend a minimum of 90 days and a maximum of life in a

---

[2]Even dangerous offenders are eligible for release upon completion of their maximum term, apart from their own plea of insanity. (*People* v. *Moye, supra*, 22 Cal.3d 457, 468.)

state hospital." She replied that she understood this.[1] Under *People* v. *Vanley* (1974) 41 Cal.App.3d 846, at page 856 [116 Cal.Rptr. 446], such an admonition is required by *In re Yurko* (1974) 10 Cal.3d 857, at page 864 [112 Cal.Rptr. 513, 519 P.2d 516], and because "a person who pleads *not* guilty by reason of insanity may figure that the plea is simply another way to 'beat the rap'" when in fact long confinement is possible.[2] The reasons for giving the admonition are different from those involved in the *Boykin-Tahl* situation where the admonition is required because constitutional rights are being waived when a guilty plea is entered. We here deal with a typical dual plea and trial situation involving a not guilty plea followed by a trial of the guilt issue where presumably Lomboy first desired to put the people to their burden of proof on the guilt issue and waived no constitutional rights; and by her NGI plea, when made, Lomboy also waived no constitutional rights and was herself put to the burden of proving her defense.

Having once been advised of the consequences of the not guilty by reason of insanity plea in the context of the murder charge, Lomboy was put on notice the NGI plea is not "another way to 'beat the rap'" and that custody in the mental health facility could continue for life. The concern expressed by the court in *Vanley* thus was removed here. The fact the maximum term of possible confinement under the criminal charges might be shortened because the amended information sought only a lesser included offense is not so significant that the defendant must be readvised of the consequences before proceeding to the second phase. The common sense reason for the admonishment having been fulfilled and essential consequences of the plea having been explained, I suggest it is not reversible error to fail to repeat or detail with exactitude the maximum term an insanity plea might entail (see *People* v. *Wetmore* (1978) 22 Cal.3d 318, 322-323, fn. 2 [149 Cal.Rptr. 265, 583

---

[1]The transcript reads: "THE COURT: All right. Now, I want you to understand that by entering a—a not guilty by reason of insanity plea, that that issue could very well be decided by a judge or a jury, and if ultimately found to be true you would spend a minimum of 90 days and a maximum of life in a state hospital. Do you understand that?

"THE DEFENDANT: Yes, sir."

[2]It should be noted since *Vanley, supra*, 41 Cal.App.3d 846, the maximum term of confinement for a successfully asserted plea of insanity under Penal Code section 1026 has been modified by Penal Code section 1026.5. No longer is the hospital commitment an indefinite one. Currently the maximum time a person may be kept in custody may not exceed the longest term of imprisonment which could have been imposed for the offense of which the person was convicted (Pen. Code, § 1026.5, subd. (a); see *In re Moye* (1978) 22 Cal.3d 457, 467 [149 Cal.Rptr. 491, 584 P.2d 1097]).

P.2d 1308]). If, as the majority asserts, she must be readvised she faces a possible life commitment, I see no prejudice to her requiring reversal here since that was exactly what she was advised in the first instance.[3] Since there were no constitutional rights involved, in the absence of prejudice there has been no miscarriage of justice (Cal. Const., art. VI, § 13; see *People* v. *Walker* (1959) 170 Cal.App.2d 159, 164-165 [338 P.2d 536]).

The maximum term commitment is applicable only if Lomboy continually fails her review process (Pen. Code, § 1026, subd. (e)), and is unable to establish that her sanity has been restored (Pen. Code, §§ 1026, subd. (b), 1026.1, 1026.2). Further, her commitment could continue for life only if she is subjected to extended commitment at the end of the maximum term for successive additional two-year periods (Pen. Code, § 1026.5, subd. (b)). In connection with these extended commitments for additional two-year periods beyond the maximum term, a full panoply of rights is accorded the committed person before any such extension may be ordered. Those rights include jury trial, discovery, appointed counsel and appointed psychologists or psychiatrists (Pen. Code, § 1026.5, subds. (b)(3), (4) and (5)) and *the burden is on the prosecuting attorney* to prove the person is, among other things, one who by reason of mental disease, defect, or disorder represents a substantial danger of physical harm to others (*In re Moye, supra,* 22 Cal.3d 457, 467-468; Pen. Code, § 1026.5, subds. (b)(1) and (6)). The standard of proof in each such proceeding is proof beyond a reasonable doubt (*In re Moye, supra,* 22 Cal.3d at pp. 467-468; *People* v. *Burnick* (1975) 14 Cal.3d 306, 322 [121 Cal.Rptr. 488, 535 P.2d 352]). In light of these characteristics attending the possibility of a two-year extended commitment beyond the maximum term for the criminal offense, neither an extended commitment nor a lifetime commitment can be viewed as a *direct* consequence of the NGI plea. Rather, because such a commitment is merely a possibility, not a certainty, and depends upon new findings by an independent tribunal in a fresh proceeding based upon a set of facts then established, it is apparent both the extended commitment and the lifetime commitment possibilities are purely collateral consequences of the plea. Since they are collateral con-

---

[3] Lomboy's counsel advised her some time before the restoration to sanity inquiry that her maximum commitment in state hospital would be six years. In my view, if there is a correct admonition for the maximum term of commitment for an NGI plea as it concerns a manslaughter charge, this is the technically correct advice of the *direct* consequences.

sequences, it is unnecessary to admonish a defendant about them (*People* v. *Flores* (1974) 38 Cal.App.3d 484, 487 [113 Cal.Rptr. 272]).

Aside from this fundamental divergence from the view expressed in the majority opinion, I am concerned about certain implications the majority's rule raises for other cases:

First, it is not clear whether there must be a readmonition of the consequences of the NGI plea in cases where the accusatory pleading is not changed but the defendant is simply found guilty of a lesser included offense. While the Supreme Court has told us, in dictum, it does not impose a requirement a defendant be readvised of the consequences of his NGI plea after he has been found guilty of the offense charged (*People* v. *Wetmore, supra*, 22 Cal.3d 318, 322-323, fn. 2), the majority's rule leads to the opposite conclusion where a lesser included offense is involved. There is no essential difference in the two situations.

Second, if, after the accusatory pleading is amended or the guilty verdict to the different offense is returned, the trial court carries out its duty under the majority's rule by readvising the defendant he may have a lifetime hospital commitment, what is the effect on the defendant? Could not a defendant who is permitted to withdraw his NGI plea after such advice argue with force there was coercion in the advisement which included the parade of horribles and he was thus improperly deprived of needed hospital treatment which might have been resolved in 90 days? (See *In re Moye, supra*, 22 Cal.3d 457, 468; and see *People* v. *Redmond* (1971) 16 Cal.App.3d 931, 938-939 [94 Cal.Rptr. 543].)

Third, I am concerned about the possible application of the majority's rule retroactively to cases that have long since been otherwise final. The matter of retroactivity should be discussed and decided (see *In re Yurko* (1974) 10 Cal.3d 857, 865 [112 Cal.Rptr. 513, 519 P.2d 516]).

This important area of criminal procedure needs reassessment in light of the statutory changes since the decision in *In re Moye, supra*, 22 Cal.3d 457. I strongly urge such a response by the Supreme Court.

Nevertheless, in this case I would indulge in all intendments and presumptions in support of the judgment, and would conclude Lomboy, informed in a general manner of a life commitment possibility in connection with her personally entered NGI plea and failing to raise any

question about the matter at any time after the information was amended to charge manslaughter, was not misinformed so as to be deprived of an opportunity to move the court to withdraw her NGI plea or otherwise plead anew to the amended charge. On the record, Lomboy was not prejudiced by the failure to rearraign her and advise her of the life commitment possibility on her NGI plea (see *People* v. *Walker, supra,* 170 Cal.App.2d 159, 164-165).

I would affirm the judgment and allow Lomboy to continue receiving the medical treatment she needs without interruption for further proceedings on the NGI plea.

Petitions for a rehearing were denied February 26 and March 11, 1981. Cologne, Acting P. J., was of the opinion that the respondent's petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied April 29, 1981.