[No. B031528. Second Dist., Div. Five. Aug. 29, 1988.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
HARVEY JAMES BANNISTER, Real Party in Interest.

**COUNSEL**

Ira Reiner, District Attorney, Donald J. Kaplan and Dirk L. Hudson, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Russell Iungerich, under appointment by the Court of Appeal, for Real Party in Interest.

**OPINION**

**ASHBY, J.**—In this proceeding, the People challenge an order of the superior court directing that real party Harvey Bannister be released forthwith from Patton State Hospital. Bannister contends that he is entitled to immediate release because he was not informed, at the time he bargained for a three-year commitment in 1980, that the commitment could be extended indefinitely. We hold that *People* v. *Lomboy* (1981) 116 Cal.App.3d 67 [171

Cal.Rptr. 812], which requires such an admonition, does not apply retroactively to Bannister's case.

## FACTS

In 1980, after pleading not guilty by reason of insanity (NGI) to a charge of arson, Bannister was committed to the Department of Mental Hygiene. At the time of the plea, Bannister was told that the commitment would be "for a minimum of ninety days and a maximum of three years." Bannister was not told that the commitment could be extended if he was found to be a person "who, by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others." (Pen. Code, § 1026.5, subd. (b)(1).)

Bannister's commitment was extended twice, in March 1983 and March 1985. In September 1986, a staff psychiatrist at Atascadero State Hospital, noting Bannister's scheduled release date of March 1987, recommended that the People file another petition for extended commitment. The doctor's report noted that Bannister had been "locked up at Camarillo State Hospital off and on since approximately age 12," was "convicted four times for exposing himself in public," and had "one count of crimes against children in 1979." The report continued: "Patient's progress is marked by a total negativistic attitude on the patient's part. He consistently denies mental illness and any need for help, and refuses all kinds of treatment modalities offered to him. He refuses to show any insight into his unacceptable behavior, such as horseplaying and unacceptable sexual (mostly homosexual) behavior. His only goal is to gain release, and he believes he earned it by virtue of the time he has spent here and does not consider that he has two years of treatment and progress in his mental condition to obtain release. This has been presented to him several times, but patient refuses even to listen to it and falls back on his rights to petition the court, that his time will be up, etc. Meanwhile, he is clinically far from being ready for release.

"Reason for this recommendation is that due to patient's hard-core personality difficulties, coupled with mental retardation, he is unable to form judgment as to the severity in nature and necessity of preventing further crimes. He thinks nothing about his past crimes which were child molestation, exposure, firesetting. . . . I would like to add that the nature of Mr. Bannister's crimes, such as child molesting and firesetting, are such that they could go undetected in the community for a considerable length of time and enable him to do considerable damage, and these two types of crimes are practically impossible to control by outpatient treatment."

On December 18, 1986, the People filed a petition for extended commitment with the doctor's report attached. On October 19, 1987, Bannister,

represented by the public defender, filed a motion to dismiss the petition, claiming that a further extension of his commitment would violate due process because he had not been advised by the court at the time of his plea that the commitment could be extended to more than three years. Such an advisement has been required since *People* v. *Lomboy, supra,* 116 Cal.App.3d 67, decided a year after Bannister's plea in this case.

Bannister's motion to dismiss the petition was heard by the respondent court on November 16, 1987. The court elected to treat the motion as a petition for writ of habeas corpus, granted the petition, and ordered that Bannister be released on December 10, 1987 (thus affording the People time to file a notice of appeal). The People thereafter filed both a notice of appeal and the present petition, requesting a stay of the court's order to prevent Bannister's release. We issued a stay and, at the request of the public defender (who had previously represented Bannister, but declared a conflict), appointed counsel to represent Bannister. Bannister filed an answer to the petition and a request for bail.

We conclude that Bannister is not entitled to release, and that the respondent court should conduct a hearing upon the People's petition for extended commitment.

## DISCUSSION

 Bannister contends that because he bargained for and was promised a confinement of only three years, the court had no discretion to entertain the People's petition for extension and that the appropriate alternative was the immediate release which the court ordered.

The mere fact that Bannister completed his three-year commitment does not compel his release. Persons such as Bannister "properly, and consistent with equal protection principles, may be subjected to a period of extended commitment once the maximum term of punishment has expired, in the event the People (or other committing authority) can establish that the person committed remains a danger to the health and safety of himself or others." (*In re Moye* (1978) 22 Cal.3d 457, 467 [149 Cal.Rptr. 491, 584 P.2d 1097].) The People have twice demonstrated, in accordance with the procedural safeguards set forth in Penal Code section 1026.5, that Bannister is such an individual.

 The real issue in this proceeding is whether Bannister is entitled to immediate release because he was not informed, at the time he agreed to the three-year commitment, that the commitment could be extended, possibly for life.

At the time Bannister entered his NGI plea in 1980, there was no requirement that individuals such as Bannister be advised that they were facing a possible lifetime commitment to the state hospital. This changed in 1981, when the Fourth District Court of Appeal held, in *People* v. *Lomboy, supra,* 116 Cal.App.3d 67, that the possibility of a lifetime commitment was a direct, rather than indirect or collateral consequence of a plea of not guilty by reason of insanity (see *In re Yurko* (1974) 10 Cal.3d 857 [112 Cal.Rptr. 513, 519 P.2d 561]), and the failure to give a proper advisement was an error of constitutional magnitude. Although urged to do so by the dissenting justice, the majority in *Lomboy* declined to address the issue of the retroactivity of its decision. This left a gap in the law which we must fill in order to resolve the issues raised here. We hold that *Lomboy* should be applied prospectively only.

■ The criteria for determining the retroactivity of constitutional rulings were set forth by our Supreme Court in *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]. Those criteria are " '(1) the purpose of the new rule; (2) the extent of reliance upon the old rule; and (3) the effect retroactive application would have upon the administration of justice.' " (1 Cal.3d at p. 134, citing *Halliday* v. *United States* (1969) 394 U.S. 831 at p. 832 [23 L.Ed.2d 16, 19, 89 S.Ct. 1498].) In *Tahl,* the court held that the recently decided *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], which imposed more stringent requirements for guilty pleas than had previously been utilized in California, applied prospectively only and could not be applied to reverse defendant's judgment of conviction for murder entered upon a guilty plea which was constitutionally valid at the time it was taken. The *Tahl* court noted that the pre-*Boykin* practice of taking guilty pleas was one upon which trial courts and prosecutors had "justifiably relied for decades." The court continued: "[W]e also must recognize that a 'large number of constitutionally valid convictions . . . may have been obtained'—and indeed were obtained—under the previous practice. To invalidate all such prior guilty pleas years and decades after their acceptance would have a dolorous effect upon the administration of justice. [Citation.] In light of these combined legal and pragmatic factors, we believe *Boykin* v. *Alabama* and the procedures adopted herein must be given prospective application only, i.e., to those cases in which pleas were entered subsequent to the effective date of that decision. As petitioner pleaded guilty well prior to that date, and we have determined his plea to be voluntary and in conformity with then prevailing California law and practice, petitioner's procedural attack on his plea must fail." (*In re Tahl, supra,* 1 Cal.3d at p. 135.)

■ Bannister's plea in this case was made according to a procedure "upon which trial courts and prosecutors had justifiably relied for decades."

We can only guess at the number of individuals who, like Bannister, entered NGI pleas prior to *Lomboy,* had their commitments extended pursuant to Penal Code section 1026.5, and are still confined in state hospitals or other treatment facilities. We are unwilling to compel the release of those individuals by applying *Lomboy* retroactively and invalidating NGI pleas which were constitutionally obtained according to pre-*Lomboy* standards.

Let a peremptory writ of mandate issue directing the respondent court to vacate its order of November 16, 1987 (granting habeas corpus relief) and enter a new and different order setting for hearing the People's petition for extended recommitment, filed December 18, 1986, in that matter entitled People of the State of California v. Harvey James Bannister, Los Angeles Superior Court case numbers A588017 and M253501.

Bannister's motion for release on own recognizance or, in the alternative, bail, is denied.

Lucas, P. J., and Boren, J., concurred.

A petition for a rehearing was denied September 22, 1988, and the petition of real party in interest for review by the Supreme Court was denied December 22, 1988.