[No. B029374. Second Dist., Div. Seven. Apr. 7, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL McINTYRE, Defendant and Appellant.

[No. B038117. Second Dist., Div. Seven. Apr. 7, 1989.]

In re MICHAEL McINTYRE on Habeas Corpus.

COUNSEL

Bernard W. Talmas for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, William T. Harter and Carolyn D. Fuson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WOODS (Fred), J.**—Appeal from extension of commitment pursuant to Penal Code section 1026.5, subdivision (b).[1] Petition for writ of habeas corpus alleging a denial of effective assistance of counsel at the time of plea and sentencing (Super. Ct. L.A. County No. A449187.)

### PROCEDURAL AND FACTUAL BACKGROUND

In 1977 appellant, then 18 years old, having been found not guilty by reason of insanity of voluntary manslaughter, was committed to a state hospital. While there, another patient reportedly stole some of his money. Appellant retaliated by stabbing him with a steak knife.

The district attorney charged appellant with assault with a deadly weapon (§ 245, subd. (a)) and with causing great bodily injury (§ 12022.7).

On September 19, 1980, appellant, represented by counsel, entered into a plea bargain with the district attorney. The bargain was accepted by the court and implemented that same day. Its terms, memorialized both by a signed written statement and a transcript of the oral proceedings, were: appellant would plead nolo contendere and not guilty by reason of insanity. The "sanity phase to be submitted on M.D.'s reports.[2] Court will find defendant NGI [not guilty by reason of insanity] and commit him to state hospital at Patton." The agreement included a chart depicting the "maximum total punishment" appellant could receive as seven years. (Four years for the assault charge and three years for the enhancement.) During the court proceedings the district attorney advised appellant "you understand as a consequence of this plea that this carries a maximum term of four years in state prison with an additional subsequent three years for great bodily injury allegation making a total of seven years; you understand that?" Appellant stated he did.

---

[1] Unless otherwise noted all statutory references are to the Penal Code.

[2] Three doctors examined appellant. The court read and considered their reports.

The court accepted appellant's pleas, found him not guilty by reason of insanity and ordered him "committed to Patton State Hospital until such time as his sanity has been restored . . . period not to exceed the maximum period of time that he could have been imprisoned."

The record is barren of any reference to section 1026.5, subdivision (b)[3] and its authorization of repeated two-year commitment extensions.

On February 18, 1987, the district attorney filed a petition pursuant to section 1026.5, subdivision (b) to extend appellant's commitment. Appellant's motion to dismiss the petition was denied, a hearing was held, the petition was found true, and appellant filed a notice of appeal.[4]

### CONTENTIONS

Appellant urges three grounds for invalidating the extended commitment order. All focus on the events of September 19, 1980, the day of his plea bargain and original commitment.

He contends: 1. The extended commitment order violated the terms of his plea bargain.

2. Appellant was improperly advised of the consequences of his plea.

3. Appellant was denied effective assistance of counsel by counsel's failure to advise him his commitment could be extended.[5]

### DISCUSSION

1. *The extended commitment order violated the terms of his plea bargain.*

In *Santobello* v. *New York* (1971) 404 U.S. 257 [30 L.Ed.2d 427, 92 S.Ct. 495] the prosecutor induced the defendant to plead guilty by reducing the

---

[3] "A person may be committed beyond the term prescribed by subdivision (a) only under the procedure set forth in this subdivision and only if such person has been committed under Section 1026 for a felony, and who by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others."

Subdivision (b)(6) provides: "If the court or jury finds that the patient is a person described in paragraph (1), the court shall order the patient recommitted to the facility in which the patient was confined at the time the petition was filed. Any such commitment shall be for an additional period of two years from the date of termination of the previous commitment."

[4] Section 1237 provides in part: "An appeal may be taken by the defendant: (a) From a final judgment of conviction . . . the commitment of a defendant for insanity . . . shall be deemed to be a final judgment within the meaning of this section."

[5] Appellant's petition for a writ of habeas corpus is also based upon this claim.

charges and by agreeing not to make a sentence recommendation. He then violated that agreement by urging the maximum sentence of one year imprisonment. In reversing the judgment the court held that ". . . when a plea rests in any significant degree on a promise or agreement of the prosecutor . . . such promise must be fulfilled." (*Id.,* at p. 262 [30 L.Ed.2d at p. 433].)

Similarly, when the court, as part of a plea bargain, said it would obtain a diagnostic report before imposing sentence, and then failed to do so, it committed reversible error. (*People* v. *Mancheno* (1982) 32 Cal.3d 855 [187 Cal.Rptr. 441, 654 P.2d 211].) ■ The "integrity of the process [must] be maintained by insuring that the state keep[s] its word when it offers inducements in exchange for a plea of guilty." (*Id.,* at p. 860.)

Thus if, as part of the bargain which induced appellant to plead nolo contendere and not guilty by reason of insanity, the prosecutor made some promise which he failed to keep, appellant is entitled to specific performance of that promise, to withdraw his pleas, or to some other appropriate relief. (32 Cal.3d at pp. 860-861.)

■ We have examined the signed plea agreement, read the plea proceeding transcript and have found no unkept promise.

The exchanged promises were that appellant would concede his guilt and the district attorney would concede appellant's insanity. The mechanisms for these promises were appellant's nolo contendere and not guilty by reason of insanity pleas and the district attorney's submitting the sanity issue upon doctors' reports. The mechanisms were employed, the promises kept, and the objectives achieved. Appellant avoided prison, the district attorney succeeded in having appellant confined.

The district attorney did state to appellant, both in the signed plea agreement and orally, that the prison term for the enhanced offense was seven years. These statements were not promises nor unkept concessions. They were an accurate statement of maximum punishment. That appellant may have understood, with reason, that he would not and could not be confined in a state hospital for longer than seven years is a separate and different matter (which we next consider). But the district attorney expressly stated, as appellant acknowledges, that there was "no sentence bargain" component to their plea agreement. Thus, appellant could not reasonably believe that the district attorney relinquished any punishment prerogative.

We conclude that the district attorney's petition to extend appellant's commitment did not violate the September 19, 1980, plea bargain nor did the commitment order itself.

## 2. *Appellant was improperly advised of the consequences of his plea.*

 If *People* v. *Lomboy* (1981) 116 Cal.App.3d 67 [171 Cal.Rptr. 812] is retroactive the instant judgment must be reversed.

In *Lomboy* the defendant was originally charged with murder. She pleaded not guilty and not guilty by reason of insanity and the court advised her that if convicted of murder but found insane she could be confined in a mental institution for life.[6]

But three months later, pursuant to a plea bargain, the defendant was found guilty of voluntary manslaughter but not guilty by reason of insanity. While the court was determining whether or not the defendant had recovered her sanity the court advised the defendant that her maximum period of confinement was six years. The court did not mention two-year extensions. Defendant was found not to have recovered her sanity and was committed to a state hospital.

*Lomboy* held that the court committed prejudicial error in failing to advise the defendant that being found guilty of manslaughter subjected her to six years confinement but being found not guilty by reason of insanity of manslaughter subjected her to possible confinement for life (six years plus repeated two-year extensions).

*Lomboy* is factually indistinguishable from the instant case except that the defendant in *Lomboy,* unlike appellant, *was* initially informed that if found insane she could be committed for life.[7] Appellant was never so informed. Like the defendant in *Lomboy* appellant was misinformed about maximum confinement. Both the prosecutor and the court told him the maximum confinement period was seven years.

Holding that *People* v. *Lomboy* is not retroactive is *People* v. *Superior Court (Bannister)* (1988) 203 Cal.App.3d 1525 [250 Cal.Rptr. 909]. *Bannister* cites the *Tahl* (*In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]) criteria for determining retroactivity: " '(1) The purpose of the new rule; (2) the extent of reliance upon the old rule; and (3) the effect retroactive application would have upon the administration of justice.' " (*Id.,* at p. 134.)

Concerning the first criterion, purpose, *Bannister* is silent. About the second, reliance, *Bannister* states "[the] plea in this case was made accord-

---

[6]This advice was based upon the life term for murder not upon multiple two-year section 1026.5, subdivision (b) extensions.

[7]A fact relied upon by the dissent. (*People* v. *Lomboy, supra,* 116 Cal.App.3d at p. 73.)

ing to a procedure 'upon which trial courts and prosecutors had justifiably relied for decades.'"[8] (*People* v. *Superior Court (Bannister), supra,* 203 Cal.App.3d at p. 1529.) Regarding the third, effect upon the administration of justice, *Bannister* comments: "We can only guess at the number of individuals who, like Bannister, entered NGI pleas prior to *Lomboy,* had their commitments extended pursuant to Penal Code section 1026.5, and are still confined in state hospitals or other treatment facilities." (*Id.,* at p. 1530.)

An additional reason *Bannister* gives for holding *Lomboy* not retroactive is that "in 1980, there was no requirement that individuals . . . be advised that they were facing a possible lifetime commitment to the state hospital." (203 Cal.App.3d at p. 1529.)

We have considered these reasons for the *Bannister* holding and find them unsupported and unsupportable and therefore respectfully disagree that *People* v. *Lomboy* is not retroactive.

Our analysis begins with *Boykin* v. *Alabama, supra,* 395 U.S. 238. That landmark case held that before a court may accept a guilty plea the record must reflect that the defendant has been advised of and has personally waived his self-incrimination, confrontation, and jury trial rights. (*Id.,* at p. 243 [23 L.Ed.2d at p. 279].) More pertinent to our inquiry, the court stated: "What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." (*Id.,* at pp. 243-244 [23 L.Ed.2d at p. 280].)

California courts promptly and consistently implemented this *Boykin* mandate. *In re Tahl, supra,* 1 Cal.3d 122, rejected an inferential interpretation of *Boykin*[9] and instead adopted an interpretation requiring specific advisements and express waivers. The court stated, ". . . the record must contain *on its face* direct evidence that the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of his plea." (*Id.,* at p. 132.)

This responsibility to insure that the defendant was aware of the consequences of his plea was emphasized by *Tahl*. ". . . it is salutary for the

---

[8] The quoted phrase is from *Tahl,* referring to guilty plea procedures before *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709].

[9] "There are at least two plausible interpretations of *Boykin*. First, it may be sufficient that there are statements and facts in the record from which a reasonable presumption could be drawn that a defendant has been apprised of and has voluntarily waived his rights, and has intelligently pleaded guilty." (1 Cal.3d at pp. 130-131.)

court . . . to explain the full import of his guilty plea to the accused." (1 Cal.3d at p. 133.) *Tahl* also adopted this advice: ". . . the trial court is best advised to conduct an on the record examination of the defendant which should include . . . an attempt to satisfy itself that the defendant understands . . . the permissible range of sentences." (*Id.,* at p. 133, fn. 7.)

In 1970, one year after *Boykin* and *Tahl,* the California Supreme Court indicated that *Boykin* applied to "slow plea" trials (*In re Mosley* (1970) 1 Cal.3d 913 [83 Cal.Rptr. 809, 464 P.2d 473]) and in 1973 squarely so held (*People* v. *Levey* (1973) 8 Cal.3d 648 [105 Cal.Rptr. 516, 504 P.2d 452]).

In 1971 *People* v. *Redmond* (1971) 16 Cal.App.3d 931 [94 Cal.Rptr. 543], foreshadowing *People* v. *Lomboy,* held that when a defendant who was originally charged with felony assault but convicted of misdemeanor assault then moved to withdraw his NGI plea, it was prejudicial error to deny his motion.

In 1973 *Boykin* was held applicable to misdemeanors. (*Mills* v. *Municipal Court* (1973) 10 Cal.3d 288 [110 Cal.Rptr. 329, 515 P.2d 273].) Additionally, the California Supreme Court required trial courts to advise defendants of the lifetime sex-offender registration provisions of section 290. (*In re Birch* (1973) 10 Cal.3d 314 [110 Cal.Rptr. 212, 515 P.2d 12].)

In 1974 the requirement to advise a defendant of the consequences of his guilty plea was held to include admissions of prior felony allegations.[10] (*In re Yurko* (1974) 10 Cal.3d 857 [112 Cal.Rptr. 513, 519 P.2d 561].)

Also decided in 1974, seven years prior to *People* v. *Lomboy,* was *People* v. *Vanley* (1974) 41 Cal.App.3d 846 [116 Cal.Rptr. 446]. ■ In *Vanley,* much like *Lomboy* and the instant case, the defendant entered a "slow plea" by submitting guilt on the transcript of the preliminary hearing and sanity on the reports of doctors. He was found guilty of felony joyriding (Veh. Code, § 10851) but insane. On appeal he urged that his NGI plea "should not have been accepted without the record showing that he was aware of the fact that a successful assertion of the plea could result in an indefinite commitment in a state hospital for a 90-day minimum and a lifetime maximum." (*Id.,* at p. 855.)

The court stated that this "point has merit." (41 Cal.App.3d at p. 855.) Two supporting sources were relied upon. One was *People* v. *Redmond, supra,* 16 Cal.App.3d 931. The court stated, "What is important is that

---

[10]This was a judicially declared rule of criminal procedure. The court did not reach the constitutional issue.

*Redmond* was based on precisely the same principles from which our views . . . are derived: that a defendant may not be permitted to take certain fundamental steps without being made aware of their consequences and of the constitutional rights he is waiving by taking them." (*People* v. *Vanley, supra,* 41 Cal.App.3d at p. 857.)

The other was *In re Yurko.* The court noted "the principle of *Yurko* demands that any defendant who pleads not guilty by reason of insanity be advised that he thereby runs a risk of a possible lifetime commitment." (41 Cal.App.3d at p. 856.)

The following year our Supreme Court held that an NGI plea must be personally entered by a defendant, not by counsel, and that a court cannot compel an insanity defense. (*People* v. *Gauze* (1975) 15 Cal.3d 709 [125 Cal.Rptr. 773, 542 P.2d 1365].)

Also in 1975 the court elaborated upon required advisements, stating "In all guilty plea and submission cases the defendant shall be advised of the direct consequences of conviction such as the permissible range of punishment provided by statute, registration requirements, if any (e.g., § 290; Health & Saf. Code, § 11590), and, in appropriate cases the possibility of commitment pursuant to Welfare and Institutions Code, sections 3050, 3051, or 6302. [¶] We are satisfied that compliance with these requirements will not unduly burden trial courts, some of which have anticipated most if not all of the requirements set forth herein." (*Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 605 [119 Cal.Rptr. 302, 531 P.2d 1086].) The court then footnoted this reference: "See, e.g., Los Angeles Superior Court, Criminal Trial Judges' Benchbook pages 267-274, 279-280." (*Id.,* at p. 605, fn. 6.)

Three years later, in 1978, the Supreme Court approvingly noted the required *Vanley* advisement and trial court compliance with that requirement: "*People* v. *Vanley* [cite omitted] required that the court before accepting a plea of not guilty by reason of insanity advise the defendant that the successful assertion of that plea might result in his indefinite commitment to a state hospital. The trial court here complied with that requirement." (*People* v. *Wetmore* (1978) 22 Cal.3d 318, at p. 322, fn. 2 [149 Cal.Rptr. 265, 583 P.2d 1308].)

Less than a month after *Wetmore* the Supreme Court further protected persons acquitted of criminal charges because of insanity. The court stated that "well established constitutional principles of equal protection require that the duration of institutional confinement of such persons cannot exceed the maximum term for the underlying offense, unless the People or other committing authority establish grounds for an extended commit-

ment. . . ."[11] (*In re Moye* (1978) 22 Cal.3d 457, 460 [149 Cal.Rptr. 491, 584 P.2d 1097].)

Urgency legislation, including section 1026.5, subdivision (b), incorporating the mandates of *In re Moye* was enacted and became effective September 28, 1979.

It was a year after this legislation, on September 19, 1980, that appellant entered his nolo contendere and "slow NGI" pleas. Five months after that *People* v. *Lomboy* was decided.

To summarize: 10 years before *Lomboy* its decision was foreshadowed by *People* v. *Redmond*. Seven years before *Lomboy*, *People* v. *Vanley* required that an advisement indistinguishable from *Lomboy*'s be given. Three years before *Lomboy* the California Supreme Court approvingly noted this *Vanley* advisement and the fact that trial courts were giving it. (*People* v. *Wetmore*.)

Thus the statement in *Bannister* that "in 1980, there was no requirement that individuals be advised that they were facing a possible lifetime commitment to the state hospital" (*People* v. *Superior Court (Bannister), supra,* 203 Cal.App.3d at p. 1529) is not correct. *People* v. *Vanley,* in 1974, required just such an advisement and in 1978 this advisement was approved by the California Supreme Court in *People* v. *Wetmore*.[12]

Additionally, *Bannister*'s pronouncement that "[the] plea in this case was made according to a procedure 'upon which trial courts and prosecutors had justifiably relied for decades'" (203 Cal.App.3d at p. 1529) is similarly incorrect. At least since *Vanley,* if not *People* v. *Redmond,* seven years prior to *Lomboy,* trial courts were required to advise persons in appellant's circumstances that they faced a possible lifetime hospital commitment.

Finally, and for the same reasons, *Bannister*'s comment (203 Cal.App.3d at p. 1530) that "We can only guess at the number of individuals who, like Bannister, entered NGI pleas prior to *Lomboy,* had their commitments extended pursuant to Penal Code section 1026.5, and are still confined in state hospitals or other treatment facilities" is unsupportable. We also observe that seven years elapsed before a California appellate court questioned the retroactivity of *Lomboy,* implicit evidence of trial court compliance with both *Vanley* and *Lomboy*.

---

[11] Section 1026 then provided for a lifetime commitment.
[12] *Bannister* did not cite either *People* v. *Lomboy* or *People* v. *Wetmore*.

Our analysis of the *Tahl* retroactivity criteria differs from *Bannister*'s. The purpose of the *Vanley-Lomboy* advisement is to ensure fundamental fairness. If an accused, aware of his risked liberty, pleads NGI that is fair. But if an accused, ignorant of his risked liberty, is allowed to plead NGI, that is unfair. To tolerate such unfairness is incompatible with basic notions of due process.

Secondly, as we have discussed, there has been negligible "reliance upon the old rule," at least since the 1974 *Vanley* mandate. And thirdly, for these reasons, there would be scant if any adverse effect upon the administration of justice to apply *Lomboy* retroactively.

We therefore hold *Lomboy* retroactive to September 28, 1979, the effective date of section 1026.5, subdivision (b), and find the court's failure to advise appellant he could be committed to a state hospital for life prejudicial error.[13]

In so holding we are mindful of this observation: "It must be remembered that, except for their own plea of insanity, even the most dangerous of offenders are released to society upon serving their maximum term. Under such circumstances, the possibility of an indefinite, lifetime confinement provided by section 1026 may well deter from entering an insanity plea those very persons most in need of hospital treatment. Such a result serves neither the interest of the public nor those like petitioner who have entered insanity pleas." (*In re Moye, supra*, 22 Cal.3d 457, 468.)

We find it unnecessary to address appellant's third contention that he was denied effective assistance of counsel. Further, we deny as moot appellant's petition for a writ of habeas corpus.

DISPOSITION

The judgment is reversed. On remand the superior court is directed to vacate its order denying appellant's motion to dismiss the extension petition and to enter a new order granting appellant's motion. Unless there is other

---

[13] We reject respondent's "untimeliness" argument. Although in 1981 appellant may have heard about two-year extension petitions, there is no evidence appellant believed *his* commitment, described by both judge and prosecutor as a seven year maximum, could be so extended. At least not until 1987 when the district attorney filed an extension petition.

cause to detain or confine appellant[14] the superior court shall order his release.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied May 2, 1989, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied July 20, 1989.

---

[14]E.g., pursuant to Welfare and Institutions Code sections 5150, 5200, 5260, and 5300.